UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA E. BAKER,<br><br>                              Petitioner,<br><br>      v.<br><br>K.K. CLARK, Warden,<br><br>                             Respondent. | Civil No.   06cv1676-DMS (CAB)<br><br>**REPORT AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

      Dana E. Baker, a state prisoner proceeding *pro se,* has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, alleging due process violations by the Board of Prison Terms[1] ("Board") when it denied him parole. The Court has considered the Petition, Respondent's Answer and Memorandum of Points and Authorities, Petitioner's Traverse and all supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court **RECOMMENDS** that the Petition be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

## I.  BACKGROUND

      This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parke v. Baley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of

---

[1] On July 1, 2005, the Board of Prison Terms was renamed the Board of Parole Hearings.

correctness). Because Petitioner has not attempted to rebut the factual findings made by the state court, the following facts are taken from the California Court of Appeal opinion in *People v. Baker*, No. D009702, slip op. (Cal. Ct. App. May 17, 1990). The presiding commissioner also read these facts into the record at Petitioner's parole consideration hearing. (Lodgment 5, at 15-17.)

> Baker was involved in cocaine trafficking. On the day Baker killed Tim Kelly cocaine was being sold at Kelly's apartment on 51st Street in San Diego. Some time during the afternoon of February 17, 1988, Baker and Kelly argued over drugs. The argument continued for about 10 to 15 minutes, resulting in Baker leaving with the threat that someone was going to be "capped" (shot). Between 4 p.m. and 4:25 p.m. that afternoon Steven Gauthier saw two Black men running down an alley near the apartments where Kelly lived. Baker was shooting at Kelly. Sustaining 4 gunshot wounds, Kelly collapsed and died. The autopsy established the fatal wound was the upper left side of Kelly's back.
>
> Cynthia Steenhouse witnessed the shooting. She lived in an upstairs apartment overlooking the alley. She saw Baker get out of a car and start to argue with Kelly over money and drugs. When she heard gunshots she saw Baker shooting Kelly.
>
> Baker's trial testimony was consistent with much of the foregoing. He explained he and Kelly argued and that he returned to Kelly's apartment with a gun and some friends to get his drugs back. Baker's use of the gun was only to scare Kelly. Instead of being frightened Kelly rushed him grabbing for the gun. Baker shot toward the ground and at Kelly's legs. After struggling for the gun Kelly started to run. Baker ran also. He was scared. Baker turned himself in to the police the following morning after learning Kelly had died.

(Lodgment 4, at 2-3.)

On February 22, 1989, a jury found Petitioner guilty of second degree murder, with a firearm enhancement, and he was sentenced to 17 years to life. (Lodgment 1, Abstract of Judgment.) The Court of Appeal affirmed the judgment on May 17, 1990. (Lodgment 4.) Following a parole suitability hearing on July 16, 2003, the Board denied Petitioner parole. (Lodgment 5, Parole Consideration Hearing Transcript, at 68.) Petitioner challenged the Board's decision in the state superior court in a petition for writ of habeas corpus, and the petition was denied on January 25, 2005. (Lodgment 6.) On March 22, 2005, Petitioner filed a petition for writ of habeas corpus in the state appellate court. (Lodgment 7.) That petition was denied on April 21, 2005. (Lodgment 8.) On August 10, 2005, Petitioner filed a petition for writ of habeas corpus in the state supreme court. (Lodgment 9.) The petition was denied on June 14, 2006. (Lodgment 10.)

Petitioner filed the instant federal habeas petition on August 18, 2006. [Doc. No. 1.] That petition was dismissed, because he had failed to sign it. [Doc. No. 2.] On September 21, 2006,

Petitioner filed a First Amended Petition, and the case was reopened. [Doc. No. 4.] On January 4, 2007, Respondent filed a motion to dismiss the petition, arguing Petitioner's claim was barred by the applicable one-year statute of limitations. [Doc. No. 8] This Court recommended that the motion to dismiss be denied, because the petition was timely [Doc. No. 16], and the district judge adopted the recommendation [Doc. No. 19]. On October 5, 2007, Respondent filed an answer to the petition. [Doc. No. 21.] Petitioner filed a traverse on November 6, 2007. [Doc. No. 23.]

## II.  DISCUSSION

**A.  Scope of Review**

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States.*

28 U.S.C. § 2254(a) (emphasis added).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to habeas corpus petitions filed after 1996. *Lindh v. Murphy*, 521 U.S. 320 (1997). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

28 U.S.C.A. § 2254(d).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). *Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decided a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas

court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, this Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record "to determine whether the state court clearly erred in its application of controlling federal law." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer,* 538 U.S. at 75-76). However, a state court need not cite U.S. Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). As long as neither the reasoning nor the result of the state court decision contradicts U.S. Supreme Court precedent, the state court decision will not be "contrary to" clearly established federal law. *Id.*

**B. Analysis**

Petitioner argues that the Board violated his due process rights by continuing to rely on unchanging factors to deny him parole. (Pet. 6.) Petitioner also argues there was no evidence to support the factors considered by the Board. (*Id.* at 7.) Respondent argues the state court's denial of Petitioner's due process claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. Under clearly established federal law, Petitioner's due process claim is analyzed in two parts. First, the Court must determine whether Petitioner has a liberty interest of which he has been deprived. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). If so, the Court must determine whether the procedure used to deprive him of that liberty interest was constitutionally sufficient. *Id.*

California's parole scheme, codified in California Penal Code section 3041, vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the

Due Process Clause." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007)[2] (citing *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillon v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002)); *see also Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000) (finding that Ninth Circuit "cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). Having determined that Petitioner does have a protected liberty interest in a parole date, the Court must proceed to the second, more contentious prong of the due process analysis, whether the procedure afforded Petitioner was adequate. *Thompson*, 490 U.S. at 460.

Respondent argues that this Court is not bound by *Sass* because it is neither clearly established Supreme Court law nor did the Ninth Circuit base its decision on clearly established Supreme Court law. (Mem. of P. & A. in Supp. of Answer at 5.) This Court recommends rejecting this argument. In *Sass*, the Ninth Circuit concluded that the Supreme Court's decision in *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985), which held that "revocation of good time [credits] does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record," applies with equal force to the denial of parole "because both directly affect the duration of the prison term." *See Sass*, 461 F.3d at 1128-29 (quoting *Jancsek v. Or. Bd. of Parole*, 833 F.3d 1389, 1390 (9th Cir. 1987)). Indeed, the Court concluded that the "some evidence" standard was clearly established U.S. Supreme Court law for AEDPA purposes. *See Sass*, 461 F.3d at 1129; *see also Duhaime*, 200 F.3d at 600.

The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board. *See Hill*, 472 U.S. at 455. An examination of the entire record is not required, neither is an independent assessment of the credibility of witnesses nor weighing of the evidence. *See id.* Additionally, the evidence underlying the Board's decision must have some indicia of reliability. *McQuillion*, 306 F.3d at 904; *Jancsek*, 833 F.2d at 1390). Accordingly, if the Board's

---

[2] In a document entitled "Judicial Notice and Review of Related Case Law in Support of Petitioner's Habeas Corpus Thereof," Petitioner directs the Court to *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. Jan. 3, 2008). [Doc. No. 24.] The Court notes, however, that the Ninth Circuit recently granted en banc review in *Hayward*. *Hayward v. Marshall*, 527 F.3d 797 (May 16, 2008). Therefore, *Hayward* cannot be cited as precedent by this Court.

determination of parole suitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. *Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005); *McQuillion*, 306 F.3d at 904.

When assessing whether a state parole board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. *Irons*, 505 F.3d at 850. Accordingly, in California, the court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" constituted an unreasonable application of the "some evidence" principle articulated in *Hill*. *Id.* at 850, 852-53 (finding state court did not unreasonably apply "some evidence" standard to uphold parole suitability denial where there was some evidence at the time of the hearing to support a finding that the prisoner would present a danger to society based on the nature of the commitment offense under the applicable parole regulations).

California prescribes indeterminate sentences for non-capital murders: 25 years to life for first degree murder and 15 years to life for second degree murder. Cal. Penal Code § 190. One year prior to the expiration of a prisoner's minimum sentence, a Board panel meets with the inmate and "set(s) a release date unless it determines that the gravity of current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy incarceration." Cal. Penal Code § 3401(a). Regardless of the length of time served, "a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a).

### 1. The Board's decision and the superior court's decision

The record shows that on July 16, 2003, Petitioner appeared with counsel before the Board for a subsequent parole consideration hearing. (Lodgment 5.) The presiding commissioner informed Petitioner of his rights, including the right to a fair and impartial panel. (*Id.* at 4-5.) Petitioner and his counsel indicated they had no objections to the panel. (*Id.* at 5-6.) Petitioner's counsel made a couple of objections relating to the panel's determination of parole suitability and setting a release date, which the

presiding commissioner overruled. (*Id.* at 6-11.) Petitioner chose not to discuss the commitment offense at the hearing, so the presiding commissioner read into the record the facts of the case from the state appellate court decision affirming the judgment. (*Id.* at 15-17.) The panel then discussed additional facts of the crime provided by the probation officer, Petitioner's criminal and social background, his parole plans, and post conviction factors. In closing, the panel heard final statements from the deputy district attorney, Petitioner's attorney and Petitioner. (*Id.* at 51-60.)

After deliberations, the Board concluded that Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (*Id.* at 61.) Specifically, the Board found the crime clearly showed a lack of regard for the life of another. (*Id.*) Petitioner had an opportunity to stop, but he did not. Instead, he left and then returned and shot Mr. Kelly numerous times. (*Id.* at 62.) Petitioner also had a history of criminality. (*Id.*) He failed previous attempts to correct the criminality, including juvenile probation and juvenile ranch. (*Id.*) As a juvenile, he had been convicted of burglary, possession of stolen property on two occasions and auto theft. (*Id.*) He also had a history of marijuana and cocaine use. (*Id.* at 65.) He had stopped using cocaine but, at the time of the commitment offense, continued to deal. (*Id.*) While in prison for the commitment offense, he had 12 115s[3], with the last being in 2000. (*Id.* at 62.)

The Board did note that Petitioner had much for which he was to be commended. He had obtained his GED, he had college credits, he had completed auto mechanics and television production, and he was currently participating in a number of self-help programs. (*Id.* at 63.) He also worked as a member of the yard crew, where he received average to above average work reports. (*Id.*) Petitioner had an appropriate place to live if paroled and had marketable work skills. (*Id.*) However, the Board found these positive aspects did not outweigh the factors of unsuitability. (*Id.*)

The Board believed Petitioner needed to continue to participate in self-help programs in order to further delve into the reasons for his participation in crime and to develop skills to remain clean and sober and live by the rules of society. (*Id.* at 65.) The Board believed until further progress was made, he continued to be unpredictable and a threat to others. (*Id.*) Further, the Board found Petitioner's gains were recent and he needed to demonstrate an ability to maintain gains over an extended period of time.

---

[3] Form 115 is used to report rules violations.

(*Id.*)  The Board denied parole for two years.  (*Id.* at 68.)

The superior court upheld the decision of the Board (Lodgment 6), the state appellate court affirmed without discussing the merits of the due process claim (Lodgment 8), and the state supreme court summarily affirmed (Lodgment 10).  Because the California Supreme Court issued a summary denial, this Court must "look through" to the last reasoned state court decision which addressed the claim on the merits.  *Ylst*, 501 U.S. at 801-06.  In this case, that is the superior court's denial.  The superior court found that the Board's finding of unsuitability for parole was supported by the record. (Lodgment 6.)

The state court's rejection of this claim was not contrary to, or an unreasonable application of, the *Hill* standard, nor was it based on an unreasonable determination of the facts.  28 U.S.C. § 2254(d). The Board's July 16, 2003 decision to deny Petitioner parole after his parole consideration hearing is supported by some evidence in the record and that evidence bears some indicia of reliability.  *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1399 (9th Cir. 1987), *cert. denied*, 484 U.S. 1017 (1988); *see, e.g., Rosas*, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); *Biggs v. Terhune*, 334 F.3d 910, 919 (9th. Cir. 2003) (upholding denial of parole based solely on gravity of offense and conduct prior to imprisonment); *Morales v. Cal. Dep't of Corr.*, 16 F.3d 1001, 1005 (9th Cir. 1994) (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment).  The inquiry under *Hill* is simply "whether there is any evidence in the record that could support the conclusion reached by the [Board]."  *Hill*, 472 U.S. at 455-56.  As discussed below, the Court finds there is.

   **2.** **The Board's reliance on the commitment offense to deny parole did not result in a violation of Petitioner's due process rights**

Petitioner argues the Board violated his due process rights by continuing to rely on unchanging factors, because the commitment offense was not particularly egregious.  (Pet. 6.)  As previously noted, when determining whether "some evidence" supports a denial of parole, "[the] analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state."  *Irons*, 479 F.3d at 662.  California law permits the Board to consider the facts surrounding the commitment offense in determining whether a prisoner is too dangerous to parole.  *In re Dannenberg*, 34 Cal. 4th 1061, 1071

(Cal. 2005). However, as the Ninth Circuit has noted:

> [T]he denial of parole may be predicated on a prisoner's commitment offense only where the Board can "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released. *Dannenberg*, 34 Cal. 4th at 1071 [citations omitted]. Factors beyond the minimum elements of the crime include, *inter alia*, that "[t]he offense was carried out in a dispassionate and calculated manner," that "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and that "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Cal. Code Regs., tit. 15 § 2402(c)(1)(B), (D)-(E).

*Irons*, 479 F.3d at 663; *see also In re Rosencrantz*, 29 Cal. 4th 616, 678-79 (Cal. 2002).

The Ninth Circuit has suggested in dicta, however, that while the Board can look at immutable events, such as the nature of the commitment offense, to predict that a prisoner is not currently suitable for parole, in order to comply with federal due process guarantees the weight to be attributed to such events should decrease over time and as the prisoner demonstrates good behavior in prison. *See Biggs*, 334 F.3d 910; *Sass*, 461 F.3d 1123; *Irons*, 479 F.3d 658. Indeed, the Court has noted that "in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons*, 479 F.3d at 665.

Petitioner contends the commitment offense was not particularly egregious. (Pet. 6.) To the contrary, the Board found the commitment offense was egregious, because the motive was trivial, and Petitioner had an opportunity to permanently leave the situation, but he did not. Instead, he left the scene and returned to shoot the victim multiple times. (Lodgment 5, at 61-62.) In addition to relying on the facts of the commitment offense, the Board noted that Petitioner had a history of criminality dating back to when he was a juvenile. (*Id.* at 62.) Further, Petitioner had four new 128s[4] and two new 115s since his last parole consideration hearing. (*Id.*) Although Petitioner had been discipline free since 2000, that was only three years compared to the many years pre- and post-commitment that he had exhibited his inability to live by society's rules. Petitioner's contention that the Board relied solely on the commitment offense is not supported by the record. As previously noted, "*Hill*'s some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the [parole board] were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1128-29. The Court finds

---

[4] Form 128 is used to report minor acts of non-conformance to rules.

the record contains some evidence to support the Board's decision.

### 3. Petitioner fails to show that the Board's decision had no indicia of reliability

Petitioner argues that there was no evidence in the record to support the Board's decision. Specifically, Petitioner argues there was no evidence to support the Board's finding that the commitment offense showed a callous disregard for human suffering, the motive for the crime was trivial, or that Petitioner had a non-violent juvenile record. A relevant factor in determining whether the evidence underlying the Board's decision has some indicia of reliability is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the Board. *See Pedro*, 825 F.2d at 1399. When applying these standards, the court may look to whether a prisoner's allegations of any violations by the Board are of a "minor" nature, whether they are supported in fact, whether the prisoner had an opportunity to participate, and whether he took full advantage of that opportunity. *See Morales*, 16 F.3d at 1005; *see also McQuillion*, 306 F.3d at 900 (acknowledging general right to call witnesses at parole rescission hearing). Here, the hearing transcript reveals that Petitioner was given every opportunity to participate and speak on his own behalf. In fact, Petitioner was given the last opportunity to speak before the Board began its deliberations, so he could address all the evidence presented. (Lodgment 5, at 59-60.)

Petitioner and his counsel made no objections when the commissioner read the facts of the commitment offense into the record. Nor did they object when the commissioner included additional facts from the probation officer's report. Those facts include the fact that Petitioner was angry with the victim for taking his cocaine, and Petitioner rode away on his bicycle and returned in a vehicle with others parked behind him. (Lodgment 5, at 18.) There was evidence that Petitioner chased the victim, because the victim had a shot to the back. (*Id.* at 18-19.) The Board pointed to the fact that the shooting was over an argument about cocaine, and that Petitioner left and returned, to conclude that the crime showed a lack of regard for human life and that the motive was trivial. (*Id.* at 61-62.) As it relates to his juvenile record, the commissioner discussed a burglary that occurred in 1981, possession of stolen property in 1984 and 1985, and auto theft in 1985. (*Id.* at 20-21.) The commissioner asked Petitioner if all that was correct and he replied, "Yes, Ma'am." (*Id.* at 21.) As such, Petitioner's argument now that there was no evidence to support a juvenile record is unavailing. Petitioner has provided no support for

his contention that the Board's decision had no indicia of reliability, nor is his contention supported by the record.

### IV.  CONCLUSION

After thorough review of the record in this matter and based upon the above discussion, this Court finds that the state court's rejection of Petitioner's due process claim was not contrary to, or an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  As such, this Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.  This report and recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **August 18, 2008**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **ten days after being served with the objections**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  July 15, 2008

_____
**CATHY ANN BENCIVENGO**
United States Magistrate Judge